PASCALIS and CANFIELD *vs.* CANFIELD and others.

A. C. made his will; and after specific bequests, devised as follows: " I give " and bequeath all the remainder of my estate, both real and personal, to " my two sons P. C. and N. C., to my said two sons, their heirs and assigns " for ever." He appointed them executors; and added—" hereby empow- " ering my said executors, should my personal estate be insufficient to pay " my debts and the before mentioned legacies, to sell any of my lands which " I may leave at my decease, at their discretion, and to give deeds of con- " veyance for the same sufficient in law." *Held,* not to be a case in which the real estate became equitable assets for the payment of debts. The creditors of A. had a right of action against the sons personally and their judgments attached upon the lands devised, the legal title being in the sons.

THE bill in this cause was filed for the purpose of subjecting the estate of Amos Canfield deceased, to the payment of a debt of five thousand dollars alleged to be due to Palmer Can- field, son of the decedent and a complainant in the present suit.

*October 24, 1831.*

*Devise. Equitable as- sets.*

Amos Canfield made his will so as to pass real estate. It was dated on the twentieth day of October one thousand eight hundred and twenty-three; and contained, amongst other things (relating to specific bequests) the following clauses:— " Thirdly, I give and bequeath to my daughter Eliza Trow- " bridge, the wife of Harvey Trowbridge, one thousand dollars " to be paid by my sons and executors hereafter named in one " year after my decease. Fourthly, I give and bequeath all " the remainder of my estate, both real and personal, to my " two sons Palmer Canfield and Nathan Canfield, to be divided " equally between them, to my said two sons their heirs and " assigns for ever. Fifthly, I hereby constitute, nominate and " appoint my said two sons, Palmer Canfield and Nathan Can- " field, executors of this my last will and testament; hereby " empowering my said executors, should my personal estate be " insufficient to pay my debts and the beforenamed legacies, to

26

" sell any of the lands which I may leave at my decease, at " their discretion; and to give deeds of conveyance for the " same sufficient in the law."

The testator died possessed of a valuable real estate and some personal property, which, when turned into cash, amounted to thirteen hundred dollars: but it was not sufficient to pay his debts.

Besides the claim of the complainant Palmer Canfield, as a simple contract creditor of his father to the amount of the five thousand dollars, there were three persons who were severally creditors by specialty, namely, Ezra Lyon, Hackaliah Miller and Jabez Mead, all of whom had commenced actions at law against the devisees, the said Palmer Canfield and Nathan Canfield, in virtue of the real estate devised. On the twenty-third day of October one thousand eight hundred and twenty-nine each of them got a judgment: Mead for seven hundred and nine dollars and thirty-three cents, Lyon for six hundred and ninety-two dollars and sixteen cents, and Miller for seven hundred and ninety-one dollars and thirty-four cents.

On the twenty-fifth day of December one thousand eight hundred and twenty-nine, Nathan Canfield, for the consideration of one thousand dollars, released to James H. Trowbridge all his interest in the real estate devised to him.

Writs of *fieri facias* were issued upon the several judgments obtained by Mead, Lyon and Miller; the sheriff to whom the executions were directed levied upon the real estate whereof Amos Canfield died seized; and, on the twentieth day of May one thousand eight hundred and thirty the same was struck off to William Nelson Esq., who had acted as attorney for Miller and Mead, for two thousand five hundred dollars. Mr. Nelson was said to have bought, in trust for James H. Trowbridge, whose notes were given to the judgment creditors in satisfaction of their debts.

The complainant, Palmer Canfield, assigned his claim as a creditor of his father, the testator, to the other complainant Felix Pascalis, upon trust for the benefit of his creditors.

Besides the facts before detailed, the complainants in and by their bill, insisted that by the terms of the will of Amos Canfield

the real estate whereof he died seized and in his said will mentioned became equitable assets for the payment of his debts; that, accordingly, all his creditors were entitled to be paid rateably and proportionably according to the amounts of the debts severally due to them and without preference for or by reason of their accruing upon simple contract, specialty, judgment or otherwise; that the real estate was worth from eleven thousand dollars to twelve thousand dollars and more than sufficient to pay the specialty creditors, and the debt assigned by Palmer Canfield to Felix Pascalis; that the complainants were willing to allow to Nelson and Trowbridge the amount of their bid upon the property and give them a priority so far; and they submitted that, as the latter persons knew of the will of Amos Canfield and were aware of the estate's being indebted to the son Palmer Canfield, therefore they ought not to be allowed to retain the said property absolutely against any creditor of the said Amos Canfield, especially when a withdrawal of the property from them would not be attended with an actual pecuniary loss to themselves or deprive them of any advantage other than what might accrue from buying the property at a sacrifice, and to the disparagement of the complainants.

The complainants prayed that Palmer Canfield might be allowed and the said Nathan Canfield be directed to make sale of the real estate: that Trowbridge and Nelson (upon receiving the amount paid by them with interest) and all other proper parties might join in the conveyance; the complainant, Felix Pascalis, receive the full amount of the balance remaining of the debt due by Amos Canfield to Palmer Canfield, and assigned to Pascalis; and Palmer Canfield pay to the other creditors of Amos the amounts due to them.

An injunction was obtained, granted by the injunction master, which restrained the sheriff from delivering deeds to Nelson or Trowbridge and enjoined the latter from receiving them.

Nathan Canfield, William Nelson, James H. Trowbridge and Eliza his wife, Ezra Lyon, Hackaliah Miller and Jabez Mead were made defendants.

The defendants put in answers. There is no occasion to

detail the whole of their contents. They showed, that the defendant Nathan Canfield repeatedly requested the complainant Palmer Canfield to unite with him in selling the real estate to pay the debts; his refusal, and his putting the creditors at defiance; that judgments being also against Trowbridge and wife, Nathan Canfield assigned to Trowbridge his interest in the estate on account of the legacy, and Trowbridge was induced to buy in at the sheriff's sale for his own protection; and that Nelson purchased as his agent. An offer was made, in the answer put in by the defendants Nelson and Trowbridge and wife, to give up the purchase, provided the amount of the purchase money, the legacy due to Mrs. Trowbridge and interest and costs were paid.

A motion was now made to dissolve the injunction.

Mr. *John H. Lee,* for the defendants Nelson, Trowbridge and wife.

Mr. *James O. Grim,* in support of the injunction.

*November 1.*    THE VICE-CHANCELLOR. The present is not a case in which the real estate became equitable assets for the payment of debts.

In order to constitute such a case, there must be a devise to executors or trustees, in trust to pay debts. This appears by the case of *Benson* v. *Le Roy,* 4 *J. C. R.* 651, where a testator devised his estate, both real and personal, to four trustees in fee, three of whom were his executors, in trust to pay his debts and then to distribute the residue. Here it was held, that the assets were placed under the jurisdiction of the Court of Chancery and became equitable and the creditors were to be paid *pari passu.* And in this case of *Benson* v. *Le Roy,* the court interfered by enjoining a creditor, who was proceeding at law for the purpose of gaining a preference over other creditors. In some cases, where the estate is charged with the payment of debts generally and the devise is to executors to sell, by means whereof the descent to the heir is broken, there the proceeds upon a sale become equitable assets. While

in other cases, where the descent is not broken and there is a charge for payment of debts and an intention clearly expressed that the property should be sold for the purpose, the same principle attaches: see Lord Eldon's observations in *Bailey* v. *Ekins*, 7 *Ves.* 323, and in *Shiphard* v. *Lutwidge*, 8 *Ves.* 26.

But the present case is distinguishable from all these, because here there is no devise in trust. It is an absolute one to the two sons in fee, whereby they take as beneficial owners—charged, it is true, with the payment of a legacy and with debts which they were personally liable for at law. There is also in the case before the court a power to sell for the payment of debts, provided the personal estate should prove insufficient. But this is surplusage: as owners under the devise these devisees could sell without such a power, and in case they did not sell or pay the debts they were liable at law. The creditors had and have a perfect legal remedy against them; and when they choose to resort to it, this court will not interfere. They might all engage in the race of legal diligence at one time and the first obtaining judgment would be protected in his priority. Where the law gives a priority, equity will not destroy it: *Codwise* v. *Gelston*, 10 *J. R.* 508. The same principle is fully recognized in *Purdy* v. *Doyle*, 1 *Paige's C. R.* 558.

In the present instance the creditors prosecuted the devisees at law and recovered judgments. The judgments became liens upon the lands devised: because the legal title was in the defendants. The prosecuting creditors have acquired rights which, as against other creditors, would not be disturbed; much less, then, will this court now interfere in favor of Palmer Canfield, one of the defendants, against whom the judgments have been recovered, although he may be a creditor of the estate. He should have applied earlier, provided he had equities which entitled him to protection; and if he had a right of retainer for his debt, he should have pleaded it at law.

I am satisfied the injunction ought to be dissolved.

The complainants, through one of the answers, have an offer to convey to them upon terms; and which they may accept if they think proper.